## ST. PHILIP'S CHURCH v. ZION PRESBYTERIAN CHURCH.

1. An action (1) for the recovery of a lot of land, or, failing in this, (2) for an order limiting the use of such lot, involved in its first phase an issue of title to real estate, which could be tried only by a jury, a jury trial not having been waived.

2. *It seems* that upon the dissolution of a corporation (other than a moneyed, trading, or municipal corporation) by expiration of charter, all of its property not validly alienated before dissolution reverts to the grantors.

3. Where a corporation, having no adopted seal, directed a conveyance to be made of a lot of land, and a deed was accordingly executed professing to be under the seal of the corporation, attested by the signature of its president, and was signed by such president, and a wafer was attached, which was intended to be the seal of the corporation. *Held*, that the wafer was the corporate seal to this deed.

4. The charter of a church, under act of the legislature, being about to expire, a petition was filed with the clerk for renewal, which petition, without fault of the petitioners, was not granted until two years afterwards. Meantime the legislative charter had expired. *Held*, that the clerk's charter was a renewal of the original charter, and related back to the filing of the petition, and prevented the property of the corporation from reverting to the grantors.

5. A lease for 99 years, perpetually renewable, having been made, with certain conditions attached, and subsequently a deed of conveyance of the same land executed between the same parties, for valuable consideration, reciting the lease, but without conditions. *Held*, that the lease was merged in the conveyance, and that the grantees held the property freed of the conditions in the lease.

Before KERSHAW, J., Charleston, March, 1884.

This was an action by the Protestant Episcopal Church of the Parish of St. Philip, in Charleston, in the State of South Carolina, against the Zion Presbyterian Church of Charleston, of Charleston County, commenced September 30, 1882. The opinion of this court sufficiently states the case. The Circuit decree was as follows:

This action was tried by the court without a jury on the pleadings, the testimony taken before the master, and the argument of counsel. There were numerous objections made to the testimony, which I do not deem it necessary to consider severally. It is suffi-

cient to say that few of the matters objected to (if any) involved facts which in any way affect the result I have reached, and I do not consider any of them well taken.

It will be noticed that plaintiffs' title to the land is controverted by the answer. This raises an issue which can only be determined by a jury trial, unless waived by the defendants. It has not been so waived. *Dewalt* v. *Kinard*, 19 *S. C.*, 291. In so far, therefore, as plaintiffs seek to recover possession of the premises, they cannot have that relief at the hands of the court without a jury. In this view of the case it would not be necessary for me to pass upon the question of legal title as presented by the pleadings and the evidence. Lest, however, a different view may prevail elsewhere, I will proceed to give my conclusions in regard thereto.

I will premise by saying that the plaintiffs have established a perfect title in them at the time that the lots in question were conveyed to the Glebe Street Presbyterian Church, nor do I entertain a doubt that the law contended for by the plaintiffs is correct: that lands granted to a corporation, other than a moneyed or trading company, revert to the grantor on its dissolution by the expiration of its charter, unless there be a valid alienation during its existence. The doctrine is well stated by Chancellor Kent (2 *Com.*, *282), thus: "Corporations have a fee simple for the purposes of alienation, but they have a determinable fee for the purpose of enjoyment. On the dissolution of the corporation, the reverter is to the original grantor or his heirs ; but the grantor will be excluded by the alienation in fee, and in that way the corporators may defeat the possibility of a reverter." And again, he says: "According to the old settled law of the land, where there is no special statute provision to the contrary, upon the civil death of a corporation, all its real estate remaining unsold reverts back to the original grantor or his heirs." 2 *Com.*, *307. Says Mr. Blackstone : "A body politic may be dissolved, which dissolution is the civil death of the corporation, and in this case the lands and tenements shall revert to the person, or his heirs, who granted them to the corporation ; for the law doth annex a condition to every such grant, that if the corporation be dissolved, the grantor shall have the land

again, because the cause of the grant faileth. The grant is, indeed, only during the life of the corporation, which may endure forever; but when that life is determined by the dissolution of the body politic, the grantor takes it back by reversion, as in the case of every other grant for life." 1 *Bl. Com.*, 484.

It is not denied that this was the common law rule, but it is contended that it has generally been rejected in this country as to private corporations. The text writers, Angell & Ames, Dillon, Fields, and others, and even Chancellor Kent himself, are cited to this effect. Chancellor Kent in a note (2 *Com.*, 307) says: "The rule of the common law has, in fact, become obsolete. It has never been applied to insolvent moneyed corporations in England. The sound doctrine now is * * * that the capital and debts of banking and other moneyed corporations constitute a trust fund for the payment of creditors and stockholders." "The rule of the common law in relation to the effect of dissolution upon the property and debts of a corporation has, in fact, become obsolete and odious. * * * Indeed, at this day, it may well be doubted whether, in the view at least of a Court of Equity, it has any application to other than public and eleemosynary corporations, in which it had its origin." *Angell & Ames Corp.*, § 779, *a.*

Mr. Dillon says: "Since this doctrine has, in this country, been generally rejected as to private corporations, organized for pecuniary profit, and rests upon no foundation in reason or justice, it may perhaps be safely affirmed that it would not, on full consideration, be applied to the dissolution of a municipal corporation, by an absolute and unconditional repeal of its charter, or (if that may be done) to the case where the charter of such corporations is forfeited by a judicial sentence." (*Dillon Mun. Corp.*, § 113.) Mr. Field says on this: "If, in the case of municipal corporations, a Court of Chancery will treat the corporation's assets as a trust fund in case of the dissolution of a corporation by legislative action, and will assume the execution of the trust, or see that it is properly executed, as has been noticed, the same rule ought to prevail in cases of private corporations for pecuniary gain, and the tendency of recent opinions seems to support this view; and to sustain the doctrine that the surplus

assets, after the satisfaction of the claims of creditors, and the payment of expenses, even in the absence of statutory provisions on the subject, belong to the stockholders; that lands conveyed to such a corporation for full consideration in fee do not revert to the grantor, and the doctrine of the old common law in such cases as to reversion and forfeiture of the corporate property, if applicable at all, is not applicable to private corporations for pecuniary emolument." *Field Corp.*, § 491.

A number of cases is cited to sustain the doctrine so laid down, the most authoritative of which, perhaps, is that of *Bacon* v. *Robertson*, 18 *How.*, 480, in which Judge Campbell says: "Modern legislation has modified the odious rule of the common law, that upon the dissolution of a corporation its remaining real estate unsold reverts to the grantor and his heirs, and the courts, in a similar spirit, hold that where a corporation is authorized to acquire a fee simple to lands belonging to private persons for public use, and such acquisition is had, and compensation accepted, no reversionary estate remains, but the property may be used for any purpose, or may be disposed of by the corporation." That was the case of a municipal corporation dissolved by a decree of the court, and there seems to be no doubt that upon the dissolution of the charter of a private moneyed corporation, or of a municipal corporation, by an act of legislature or judicial decree, the assets of such corporation will be applied to the payment of the debts of the corporation, and the remainder be divided among the stockholders.

Mr. Field says (§ 492): "This right of creditors and stockholders is based not only upon natural justice and manifest equity, but it has recently been held that it is protected by the provisions of the constitution of the United States." The principal case referred to there is that of *Curran* v. *Arkansas* (15 *How.*, 305), which is a very instructive authority on this point reviewing the previous cases. Curtis, J., delivering the opinion of the court, quotes from *Mumma* v. *Potomac Company* (8 *Pet.*, 281), where it is said, "The obligation of these contracts survives, and the creditors may enforce their claims against any property belonging to the corporation which has not passed into the hands of *bona fide* purchasers, but is still held in trust for the company,

or for the stockholders thereof, at the time of its dissolution in any mode permitted by the local laws." The learned judge then proceeds : "Indeed, if it be once admitted that the property of an insolvent trading corporation, while under the management of its officers, is a trust fund in their hands for the benefit of creditors, it follows that a Court of Equity, which never allows a trust to fail for want of a trustee, would see to the execution of that trust, although by a dissolution of the corporation the legal title to its property had been changed." *Id.*, 311.

These citations are sufficient to show what the common law rule is, and how far, and upon what principles, it has been modified. It has been seen that at common law every grant of land to a corporation was a grant for the life of the body politic. That it conferred a power of alienation, but was also coupled with a reservation of the reversion, if the land should not be aliened during the life of the corporation. A reversion is not a new estate, arising at the termination of the grant, but a remnant of the estate not granted. It is "the residue of an estate left in the grantor to commence in possession after the determination of some particular estate granted by him." 2 *Bl. Com.*, 175. Whenever, under this law, there was a grant in fee of land from an individual to a corporation, there was left in the grantor this residuum of the estate, subject to be divested by an alienation during the existence of the corporation.

By an act of the colonial legislature, 1712 (2 *Stat.*, 413, § 5) : "All and every part of the common law of England," where the same was not altered by the English statutes therein made of force, or "inconsistent with the particular constitution and laws of this province" (with certain other specified exceptions), was made and declared to be "in as full force and virtue within this province as the same is, or ought to be, within the said kingdom of England." In the general statutes of 1872 (p. 767, § 10) and in the general statutes of 1882 (§ 2738) the same common law was continued of force. By this legislation the common law, as it existed in 1712, not inconsistent with the constitution, usages, and customs of the then province, and not since changed by statute, is made the law of South Carolina. By that law the reversion of lands conveyed in fee to a corporation remained in

the grantor—an estate vested and transmissible to his heirs by descent.

That this has continued the law in South Carolina has been recognized in several cases. *Elliott* v. *Morris, Harp. Eq.*, 281 ; *Attorney General* v. *Society for the Relief of Elderly and Disabled Ministers*, 10 *Rich. Eq.*, 605. In the last case the opinion of the Court of Errors was delivered by Ch. Dunkin for all the judges. Supposing a case where a corporation would cease to exist, he says : "The real estate, if any, of the corporation would revert to the grantor."

I am now considering a question of the legal right to an estate. This estate is shown to be in the grantor upon the dissolution of a corporation holding lands. How, then, can I notice the questions of trust relied on to prevent the operation of the legal results in this case ? Is there any power in a court of law to divest a vested legal estate in land in order to enforce an equity ? I can find none. If the law in question is odious, as has been said, the legislature and not the courts should alter it. Until so altered it is the duty of a court of law to declare and enforce it. I admit that courts of law are called upon to apply the maxims of the common law so modified and varied as to meet the novel exigencies of modern society ; but where the common law recognizes the legal right to an estate to be in a particular person, under a particular state of circumstances, and that common law has been perpetuated by repeated and the latest statutory enactments, and recognized by the *dicta* of some of the ablest of our modern judges, I can find nothing to justify me in attempting to change the law in order to meet the requirements of a supposed necessity or expediency.

In saying this, I do not mean to intimate an opinion that in equity the rights of creditors and stockholders, if there were any, of a defunct corporation would not be enforced whenever brought properly before a court administering equity. I agree entirely that they would be, and believe that the cases cited fully sustain the equity doctrine in favor of creditors and stockholders, both here and in England. Such a doctrine is entirely consistent with the right of the grantor to the legal estate of reverter. To enforce such trusts, equity would follow the legal estate in the

hands of the grantor after he had recovered it at law. This is what is meant by the passage cited from *Curran* v. *Arkansas*, to the effect that a Court of Equity would see to the execution of the trust, "although, by a dissolution of the corporation, *the legal title to its property had been changed.*" What "change of legal title," affected by a dissolution, can here be meant but the reverter to the grantor?

I think, however, that this doctrine of equity would not go beyond securing the creditor and stockholders of a trading or moneyed corporation. So far as I am aware, it has never been extended further than this except in the case of a municipal corporation. There are no stockholders in a religious or charitable corporation, and here the equitable relief in such cases would seem to be confined. to the case of creditors of necessity. How could equity administer the assets of a corporation like this, after it was dissolved, for the benefit of the individuals composing the congregation? No such instance has been brought to the notice of the court, and it seems to me that the authorities relied upon to maintain the doctrine are all cases of corporations connected with trades, except alone the case of a municipal corporation when it had been decreed forfeited by the courts.

Much more might be said in support of the views I have here expressed, but I think what I have already said sufficient to indicate my reasons for the opinion I have formed.

While, however, I am with the plaintiffs on this point of law, I am of opinion that it cannot avail them here, because the premises in question were duly conveyed by the Glebe Street Presbyterian Church to the Zion Presbyterian Church, by the deed of conveyance of May 10, 1866; and the charter rights of Zion Presbyterian Church were continued by their recharter on September 4, 1880, under the act of 1874. The sufficiency of the deed of alienation has been questioned, on the ground that the seal thereto was not duly proven to be the seal of the corporation. A wafer was used for a seal, but that is a sufficient seal, if so intended. *Relph & Co.* v. *Gist*, 4 *McCord*, 267. That it was so intended in this case is to be derived from the circumstances that the corporation authorized the deed to be made by the president; that there was no regular corporation seal, and

that this wafer was affixed to the deed, signed by the president, and tested by the words "witness the seal of the said Glebe Street Presbyterian Church," attested by the signature of its president, &c.

Says Mr. Fields: "On general principles, any mode of impression which would answer for private seals, in the absence of other statutory regulations, would be good in the case of corporation seals." § 283. "It may appoint an agent to convey by resolution not under seal." §§ 283, 285. And "the common seal of a corporation affixed to an instrument purporting to be executed by the proper agent, makes it a specialty where such an instrument is required, and has the same effect as if executed in a like case by a natural person." *Ibid*. It is immaterial what is used as a seal when an impression is required, "provided it is something adopted by the corporation, or by its authorized agent, and is placed upon the instrument by the proper agent, or even by his directions." *Ibid*, § 287. "When executed by the proper agent or officer of the corporation, and sealed, though by the impression of the common desk seal of a merchant, it will be presumed to be the seal of the corporation until rebutted by competent evidence." *Ibid*.

It is said in *Angell & Ames on Corporations*, § 218: "We see no reason, unless the act of incorporation expressly provides what the common seal shall be, why the substitute allowed for the private seal of an individual should not be allowed for the seal of a corporation." "In a note to section 288 of Mr. Fields' work it is said, a vote authorizing a committee to sell land empowers them to make the necessary deeds in the name of the corporation, and if the committee consists of several, who all sign their names, only one seal is necessary." *Decker* v. *Freeman*, 3 *Greenl.*, 338. Authority to make a deed would imply power to adopt a seal where no regular corporate seal has been shown to have been adopted by the body.

I therefore think the deed sufficient on this ground. But after possession for so long a time under the deed, without any disaffirmance on the part of the corporation, the act of the agent would be considered as having been affirmed and the corporation

would be bound.    If the deed was good as against them, it would bind all other persons.

As to the effect of the renewal of the charter of the Zion Presbyterian Church, of Charleston, I will assign a few reasons why I have held it sufficient to continue the chartered rights of the defendants.    In regard to corporations of this class, the act of 1874 delegated to the clerk full power to grant charters in the mode therein prescribed.    It is conceded that, on the creation of a new corporation, upon the dissolution of an old one, the title to the lands belonging to the old corporation does not revive in the new, except as against the State.    "In England it would require an act of parliament to revive the title as against the original grantor, or his heirs, but it would be at least questionable whether any statute with us could work such an entire renovation, because vested rights cannot be divested by statute." 2 *Kent,* \*309.    I think this cannot be questioned.

The point under consideration, therefore, depends upon whether there was a renovation of the Zion Presbyterian Church, of Charleston, or was it the creation of a new company after the dissolution of the old ?    The petition was signed by the president and secretary and eight other members of the corporation, and asked for a charter for the Zion Presbyterian Church, of Charleston, under the provisions of the act of 1874.    Notice was published in the News and Courier, a gazette published in Charleston, December 9, 1878, that a petition had been filed with the clerk of the court for Charleston County for the renewal of the charter of the Zion Presbyterian Church, of Charleston, S. C., pursuant to act of assembly approved February 20, 1874.    This proceeding to obtain a recharter under the act of 1874 was commenced before the expiration of the former charter.    The clerk was not authorized by the act to renew, but to grant charters, yet the granting of a charter to a corporation by the same name, and with the same powers, before the expiration of the former charter, would be but a renewal of the charter in effect.    I think, therefore, that nothing can be gained by the contention that this is not a renewal, but a new charter.    A corporation may lay down its old charter and take a new one without discontinuing the corporate life or the corporate privileges, even though the

20

funds be appropriated to other and different objects under the new charter. *Attorney General* v. *Clergy Society*, 10 *Rich. Eq.*, 604.

The charter here expired before the actual issue of the new charter by the clerk. The act required the notice to be published thirty days before the time of the application, and if no objection should be made within ten days thereafter, the clerk was required to grant the charter. Under the notice given here, if no objection was made on or before January 19, 1879, the petitioners were entitled to have their charter. It was the duty of the clerk to issue the charter on January 20, 1879. It was not, in fact, issued until September 4, 1880, after the old charter had expired by its own limitation. If the clerk had done his duty under the act, the rights of the corporation would have been preserved. Are they to be defeated by his omission of duty? I think not. The new charter, in my opinion, relates back, and will be treated as taking effect from the day when the corporation was entitled to have the charter issued under the act, and it operated, therefore, to continue the corporation with all its previous powers, as in the case of a sheriff's deed, which relates back to the sale so as to protect the possession of the purchaser. *McCall* v. *Campbell, MSS. Dec.; Kingman* v. *Glover*, 3 *Rich.*, 27; *Bank* v. *Manufacturing Co.*, 3 *Strob.*, 192. Upon the same principle, the charter here should protect the corporation from the forfeitures consequent upon a dissolution under the circumstances.

There can be no doubt of the intention of the corporation to renew and continue their corporate powers by the new charter, and it is said always to be a question of intention where a corporation takes a new charter. *Angell & Ames on Corporations*, § 780. Nor do I think it material that the clerk added to the name of the corporation the words "of Charleston County." See *Fields on Corporations*, § 24. I conclude, therefore, that plaintiffs have not established a legal right to recover possession of the premises.

It remains to consider the right of the plaintiffs to the equitable relief demanded, to wit, a restraining order to confine the defendants to the use of the property, in accordance with the trusts

and conditions contained in the original lease of the same to Caldwell and others. It is only upon this ground that plaintiffs seek to restrain the defendants, and not because the proposed use of the premises injure them as owners of adjacent lots and tenements.

I fail to see how the trusts of the lease attach to the deed of release. I am of opinion that the effect of the conveyance to Glebe Street Church of the fee of the land destroyed the previous estate held by them as lessees; that the two estates merged, and that the conditions annexed to the lease were extinguished. Where two estates meet in the same person, without any intermediate estate, the less is merged in the greater. 2 *Bl. Com.*, 177; 4 *Kent*, 100; *Mangum* v. *Piester*, 16 *S. C.*, 330. If the feoffor or lessor release to feofee or lessee all conditions or all demands in the land or confirm the estate of the feoffee, without condition by either of these means, the condition is destroyed forever. *Shep. Touch.*, 158. Though all conditions are extinguished by merger of the particular estate with the reversion at law, in equity trusts are preserved. 4 *Kent*, 102. But if the trust estate and the legal estate unite in the same person, the trust is extinguished. 2 *Wash. Real. Prop.*, 470. The equitable estate is merged in the legal. *Ibid.* For no man can be a trustee to himself. *Hill Trust.*, 25; *Lewin Trusts*, 16.

Here the plaintiffs claim that there was a trust or a condition as to the user of the land which they had an equitable right to have enforced by injunction. Such a trust or condition was annexed to the lease, but when they conveyed the fee to the lessees the trust was at an end, because the conveyance was without qualification or condition, and accompanied by the usual warranties. The recital does not qualify the deed in any particular. Its office was only to trace the history of the transaction, and to describe the relations of the parties in regard to the property and to each other, leading up to the grant, which was absolute in its terms. Deeds are to be taken most strongly against the grantors, and if the form of the conveyance is absolute, as here, nothing is to be taken as intended that is not plainly expressed in the deed.

Holding these views, I am led to the conclusion that plaintiffs

have no right of action upon any of the grounds claimed. It is needless to consider any other questions made in the case, since the result would not be changed thereby.

It is therefore ordered, adjudged, and decreed, that the complaint be dismissed, and that the plaintiffs pay the costs herein.

Both the plaintiffs and defendants appeal from the foregoing decree, upon the following exceptions:

### PLAINTIFFS' EXCEPTIONS.

1. Because his honor erred in holding as follows: "It will be noticed that plaintiffs' title to the land is controverted by the answer. This raises an issue which can only be determined by a jury trial, unless waived by the defendants. It has not been so waived. In so far, therefore, as plaintiffs seek to recover possession of the premises, they cannot have that relief at the hands of the court without a jury."

2. Because his honor erred in holding that "the premises in question were duly conveyed by the Glebe Street Presbyterian Church to the Zion Presbyterian Church by the deed of conveyance of May 10, 1866," and that the same was an *alienation.* And that "the charter rights of Zion Presbyterian Church were continued by their recharter on September 4, 1880, under the act of 1874."

3. Because his honor erred in holding the said deed of May 10, 1866, to be the deed of the corporation and sufficient as such.

4. Because his honor erred in holding as follows: "But after possession for so long a time under the deed, without any disaffirmance on the part of the corporation, the act of the agent would be considered as having been affirmed, and the corporation would be bound. *If the deed was good as against them, it would bind all other persons.*"

5. Because his honor erred in holding that the charter granted by the clerk of the court on September 4, 1880, to the defendants, "The Zion Presbyterian Church, of Charleston, of Charleston County," did not create a new corporation, but was a renovation or a renewal or a continuance of the corporation known as

the "Zion Presbyterian Church, of Charleston," with all its previous powers and rights.

6. Because his honor erred in holding that "plaintiffs have not established a legal right to recover possession of the premises."

7. Because his honor erred in holding that the trusts of the lease from the plaintiffs to John Caldwell and others did not attach to the deed of release, but that the conditions annexed to the lease were extinguished and the trust at an end, and that the recital does not qualify the deed in any particular.

8. Because his honor erred in concluding that "plaintiffs have no right of action upon any of the grounds claimed;" and in dismissing the complaint.

### DEFENDANTS' EXCEPTIONS.

That the court erred in holding that "lands granted to a corporation other than a moneyed or trading company revert to the grantor on its dissolution by the expiration of its charter, unless," &c. This ancient right of reverter, it is submitted, is in this State "obsolete and odious"; or, if existing at all, exists only as to corporations purely public or eleemosynary, and churches or religious corporations are neither.                              ,

*Messrs. McCrady, Sons & Bacot* and *C. R. Miles*, for plaintiffs.

*Messrs. Buist & Buist, A. G. Magrath*, and *H. E. Young*, for defendants.

July 22, 1885.   The opinion of the court was delivered by

Mr. Chief Justice Simpson.   The contest in this case is in reference to a certain lot of land with a church edifice thereon, located in the city of Charleston.   It is admitted that the land originally belonged to the plaintiff, and the present contest has grown out of the following facts and circumstances.

The plaintiff is, and has been for years, a body politic and corporate, under the laws of this State.   In May, 1847, it conveyed the land in dispute, by indenture of lease, to John Caldwell and others, the survivor or survivors of them, and their assigns for a term of ninety-nine years, with the privilege of a renewal of the

same for a like period, and so on from time to time forever, the same being made upon the consideration and agreement therein set forth, that the grantees or their assigns should, within a reasonable time after the execution of said indenture, erect upon the premises granted a Presbyterian church, and that the said lots shall be used for no other purpose whatever other than for the erection of the said Presbyterian church, and that in case of any attempt on the part of the said grantees or their assigns to convert the said lots granted to any purpose whatsoever other than those therein declared, then and thereafter it should be lawful for the grantor to re-enter and the same to have again and repossess, as in their first and former estate, right, and title; and further, that said grantee or assigns should apply to the legislature of the State at its next session for an act of incorporation, creating the said grantees, and such other persons as they should admit, a body politic and corporate under the name of the "Glebe Street Presbyterian Church * * * upon the creation of which, the said grantees should assign and set over the said lease unto the said 'Glebe Street Presbyterian Church.'"

In pursuance of this agreement application was made to the legislature, and by act of 1847, the free white persons who were then, or who might thereafter become, members of the Glebe Street Presbyterian Church of the city of Charleston, were duly incorporated under the name and style aforesaid, for the term of fourteen years, and thereupon the grantees aforesaid, to wit, Caldwell and others, in consideration of the agreement contained in the indenture aforesaid, did, on December —, 1847, convey and assign the said indenture of lease, and their rights thereunder to the said Glebe Street Presbyterian Church. Afterwards, to wit, in 1856, the plaintiffs, who still held the fee in said premises, for and in consideration of $2,400 paid by the said Glebe Street Presbyterian Church to the plaintiffs, by deed, setting forth the indenture, and the assignment thereof, bargained, sold, and released the said premises unto the said Glebe Street Church and their assigns forever, warranting and defending the same against all persons whatsoever.

In 1858, the Zion Presbyterian Church of Charleston, defendant, was constituted a body politic and corporate for a period of

twenty-one years. This charter expired in 1879. In 1878, however, public notice having been given of their purpose to apply for a renewal of·charter, the president, secretary, and other members of said church petitioned the clerk of the court for Charleston County for a charter, under the act of 1874. This petition, though filed before the expiration of the previous charter, was not acted upon until in September, 1880, when a charter was granted.

In 1866, the Glebe Street Church, its first charter having expired in 1859, at which time it had been renewed for a period of fourteen years, conveyed by deed, dated May 10, 1866, the said premises to the said Zion Presbyterian Church, reciting therein that the congregation heretofore worshipping in the said Glebe Street Church had united with the congregation of white persons worshipping in the Zion Presbyterian Church, and that the two had agreed to form one congregation, and that all church property standing in the name of the Glebe Street Church should belong to the·Zion Church, the said Zion Presbyterian Church having assumed the payment and discharge of the liens upon said land. The Zion Presbyterian Church took possession, under this deed, and continued in possession from its date until the — day of ——, when it contracted to sell the same to certain trustees of the African Methodist Episcopal Church, known as the Mount Zion African Methodist Episcopal Church, and to execute a conveyance thereof on the payment of the purchase money, in pursuance of which contract the said trustees were duly.let into possession.

Under these ·circumstances the action below was commenced. First, for the recovery of the premises, but in the event that such recovery could not be had, then that the defendant be enjoined from executing a conveyance of said premises to the said African Methodist Episcopal Church, or to any one else, contrary to the alleged conditions upon which the defendants held the property. This action was founded upon ·the following propositions contended for by the plaintiffs: 1. That the lease by plaintiff Caldwell and others, and the subsequent conveyance by the plaintiff to the Glebe Street Church, should be construed together, and that when thus construed, the conditions in the lease should

attach to the conveyance, thereby preventing said Glebe Street Church from conveying the property to any other use than for a Presbyterian church, on pain of forfeiture and reversion to the plaintiff. 2. That the Glebe Street Presbyterian Church made no alienation during its corporate existence of the property in question, and its charter having expired in 1873, and not being a moneyed or trading corporation, said property reverted to the plaintiff, the original grantor. 3. Admitting that the deed to the Zion Church, in 1866, was properly executed, and having been executed before the expiration of the charter of the Glebe Street Church, thereby prevented a reversion of said expiration, then it is claimed that the charter of the Zion Presbyterian Church has expired without and before alienation, and on that account a reversion has taken place.

The case was heard by his honor, Judge Kershaw, without a jury, upon testimony taken before the master, and reported to the court. His honor held, first, that inasmuch as the action in one of its phases involved title to land, an issue was raised thereby which could be tried by a jury only, unless a jury trial had been waived; and there being no waiver, he could not hear that portion of the case. He, however, discussed the questions involving the title and then proceeded to the consideration of the right of plaintiff to the equitable relief demanded, to wit, a restraining order intended to confine the defendants to the use of the property, according to the trusts and conditions contained in the original lease to Caldwell and others.

On the question of the right of reversion to the plaintiff, he held that the Glebe Street Church, to whom the plaintiff had conveyed, being a corporation other than a moneyed or trading corporation, that reversion would take place to the plaintiff on the dissolution of the said Glebe Street Church by expiration of its charter, unless before that time a valid alienation of the land had been made by said Glebe Street Church corporation, holding it to be a general principle of law, that upon the expiration of the charters of all corporations, causing their dissolution, other than moneyed, trading, or municipal corporations, the property thereof reverts to the grantor, unless before the dissolu-

tion a valid alienation has been made, subject, however, to the rights of creditors and stockholders, if any.

He held, further, that a valid alienation of the property in question had been made by the Glebe Street Church during its corporate existence to the defendant, the Zion Presbyterian Church, to wit, by deed in 1866; and therefore notwithstanding the subsequent dissolution of the Glebe Street Church corporation by expiration of its charter in 1873, no reversion could be claimed, alienation having been made before that event. He held, further, that there had been no such dissolution of the Zion Presbyterian Church by expiration of its charter as to entitle the plaintiff to a reversion on that ground. And holding, further, that the original lease to Caldwell and others, which had been assigned to the Glebe Street Church, had become merged in the fee simple, which said church afterwards obtained from the plaintiff, thereby vacating and annulling the conditions of said lease, he dismissed the complaint with costs.

Both parties have appealed, the plaintiff assigning error to all of the rulings above, except the second, and the defendant contesting the second, claiming that the ancient right of reverter in this State "is obsolete and odious," or, if existing at all, it exists only as to corporations purely public and eleemosynary.

We concur with the Circuit Judge in all of his rulings, and he has so fully and ably discussed the principles upon which these rulings were based, sustaining them, as he does, by the authorities cited in the decree, that we might content ourselves with simply referring to and adopting the decree as our own, which we would do, except for the fact it would be best, perhaps, that at least the distinct points made and decided should appear in this opinion.

The action below was intended to accomplish one of two purposes, to wit, first, the recovery of the land in dispute, and, second, failing in the first, a restraining order as demanded in the complaint. The first was a case at law, involving an issue of title to real estate, and nothing more. This was a jury case, and the Circuit Judge was certainly right in holding that, in the absence of waiver, he could not try it, and he distinctly states that there was no waiver. *De Walt* v. *Kinard*, 19 *S. C.*, 291.

As to the second, to wit, the right of reverter in a case of this kind. While the view which we have taken as to the third ground of appeal removes this question from the case to a great extent, and therefore renders its adjudication unnecessary here, yet without committing the court to a final conclusion, we will say that we think the authorities referred to by the Circuit Judge fully sustain his decree thereon, and we need not do more, therefore, than simply cite these authorities. See 2 *Kent*, 282, 307; 1 *Bl. Com.*, 484; *Angell & Ames Corp.*, § 779*n*; *Dill. Mun. Corp.*, § 113; *Field. Corp.*, § 491; *Bacon* v. *Robertson*, 18 *How.*, 480; *Elliott* v. *Morris*, *Harp. Eq.*, 281.

The judge, however, held that the plaintiffs could not avail themselves of this doctrine in this case, because the Glebe Street Church, before the expiration of its charter, had conveyed to the defendant. It is not denied that if this be true, it would defeat the reversion, but it is denied that a valid deed had been executed by the Glebe Street Church to the defendant. So that the only point in this question is, was there a valid deed executed by the Glebe Street Church in 1866 to the defendant? There is no doubt that a paper purporting to be a deed between these parties and conveying this land was executed and delivered at the time stated, the date of the execution being years before the expiration of the charter of the Glebe Street Church. The deed was drawn by a distinguished attorney of Charleston, who also witnessed it. It was recorded, was regular in form and execution in every respect, except that instead of having an established corporation seal impressed, the seal used consisted of a wafer attached. The judge held that this seal was sufficient, if so intended, citing *Relph & Co.* v. *Gist*, 4 *McCord*, 267; *Angell & Ames Corp.*, § 218; *Decker* v. *Freeman*, 3 *Greenl.*, 338. Whether it was so intended was a question of fact which the judge, upon the evidence, solved in favor of the deed. We think the testimony sustains his conclusion.

Next. The plaintiff contends that defendant's charter having expired since its purchase of the land, with no alienation before said expiration, that reverter has taken place on that account, and therefore their action should have been sustained. The Circuit Judge overruled this position, and we think, upon the facts,

that he was right. The defendant's original charter was obtained in 1858 for a term of twenty-one years. In 1878, the year before the expiration of this charter by its own terms, the church, through its officers and other members, gave notice of its purpose to apply to the clerk of the court, under the act of 1874, for a renewal of its charter, and filed a petition to that end. This petition, though thus early filed, was not acted upon by the clerk until 1880. Why this delay, is not stated, but it does not seem to have been the fault of the church, nor does it appear that the church had abandoned its right to the renewal, of which notice had been given. The clerk, however, acted in 1880, and granted a charter. We think with the Circuit Judge, that under the circumstances, and in analogy to the execution of a sheriff's deed relating back to the sale when executed after the sale, and protecting a defendant in possession, that this charter should relate back to the notice and petition. *McCall* v. *Campbell*, *MSS. Dec.*; *Kingman* v. *Glover*, 3 *Rich.*, 27; *Bank* v. *Manufacturing Co.*, 3 *Strob.*, 192. The granting of this new charter was held by the Circuit Judge to be in effect a renewal of the old, and therefore the property of the old was still preserved and retained. See *Attorney General* v. *Clergy Society*, 10 *Rich. Eq.*, 604; *Ang. & Ames Corp.*, § 780.

Lastly. Did the Circuit Judge err in holding that the conditions of the lease did not attach to the subsequent deed conveying the land in fee to the Glebe Street Church? We think not. That deed was absolute on its face and in its terms. No such conditions as those appearing in the lease were incorporated in the deed. It was executed upon a further and valuable money consideration, the sum of $2,400, which was paid. It conveyed the fee, and we can see no reason why, under the doctrine of merger, the lease was not "drowned" in the higher estate the moment the Glebe Street Church received the deed and took possession thereunder. It was said in *Mangum* v. *Piester* (16 *S. C.*, 330), sustained by Blackstone and Kent, that where two estates meet in the same person, without any intermediate estate, the less is merged in the greater. Here these facts occurred, and merger must have been the result.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.